**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| RACHEL LYNN STEELE, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:20-CV-00867-ALM-CAN |
| v. | § § | |
| COMMISSIONER, SSA, | § § | |
| Defendant. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for benefits. Plaintiff raises a single issue on appeal. Plaintiff argues the ALJ erred at step two by finding that Plaintiff's mixed connective tissue disease and central auditory processing disorder were not severe [Dkt. 24 at 7], and this error was not harmless because, even if these impairments were not severe, the ALJ failed to account for the effect of these medically determinable impairments upon Plaintiff's RFC [Dkt. 24 at 13]. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends the Commissioner's decision be **AFFIRMED.**

**RELEVANT PROCEDURAL BACKGROUND**

On July 3, 2016, Plaintiff Rachel Lynn Steele ("Plaintiff") filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act, alleging an onset of disability date of January 1, 2015 [TR 11, 295-298]. Plaintiff was born on January 5, 1969, making her forty-five (45) years of age at alleged onset and forty-eight (48) years on March 30, 2017, the date last insured [TR 73]. Plaintiff's age classification at all relevant times was that of a "younger

person." *See* 20 C.F.R. § 404.1563(c). Plaintiff's claim was initially denied on December 6, 2016, [TR 129-132], and again upon reconsideration on May 3, 2017 [TR 137-138]. Plaintiff requested an administrative hearing ("Hearing") [TR 139-140, 198-199]. An initial hearing was held before ALJ Shilling on April 30, 2018 [TR 52-71]. On July 9, 2018, ALJ Shilling issued an unfavorable decision (the "First Decision") [TR 103-122]. Relevant to the issue on appeal, ALJ Shilling found Plaintiff had the severe impairments of central auditory processing disorder ("CAPD"), chronic obstructive pulmonary disease, asthma, eczema, polyps, mixed connective tissue disease, right shoulder degenerative joint disease, depressive, bipolar and related disorder, and anxiety and related disorder [TR 108]. On July 19, 2019, the Appeals Council granted Plaintiff's request for review and remanded the case back to an ALJ [TR 123-126].

On January 7, 2020, ALJ Michael Finnie conducted a supplemental hearing ("Supplemental Hearing") [TR 28-51]. On March 27, 2020, ALJ Finnie issued an unfavorable decision again denying Plaintiff's application for benefits (the "Second Decision") [TR 8-26]. ALJ Finnie made the following sequential evaluation [TR 11-22]. At step one, ALJ Finnie found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 1, 2015, through her date last insured of March 31, 2017 [TR 13]. At step two, ALJ Finnie found:

> Through the date last insured, the claimant had the following severe impairments: asthma, chronic obstructive pulmonary disease, affective disorder, and anxiety disorder.
>
> Initially, the claimant alleged disability due to severe obstructive airway disease, chronic obstructive pulmonary disease, asthma, central auditory processing disorder, dyshidrotic eczema of hands and feet, eczema, allergies, pre-cancerous adenomatous polyps of the colon, pain in the shoulder, hips, lower back, and knees, pneumonia, and recurrent respiratory infections. Upon appeal, she alleged a new condition of mixed connective tissue disease with onset of September 2016 (Exhibit 2E/2, 6E/2).

> The medical evidence also documents additional diagnoses and, while considered singularly and in combination, any other condition not mentioned in the above finding did not interfere with the claimant's ability to work and, therefore, is not "severe". The undersigned considered all of the medically determinable impairments, within the relevant period, including those that are not severe, when assessing the claimant's residual functional capacity.

[TR 14]. ALJ Finnie did not find Plaintiff had a diagnosis of either CAPD or mixed connective tissue disease in the Second Decision. At step three, ALJ Finnie found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) [TR 14]. At step four, ALJ Finnie determined Plaintiff has the following residual functional capacity ("RFC"):

> [T]he claimant had the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) in that she was occasionally able to lift and/or carry 20 pounds, to pounds frequently, stand and/or walk for 6 hours total in an 8-hour workday, and sit for 6 hours total in an 8-hour workday. She was occasionally able to climb ladders, ropes, or scaffolds, and was to avoid exposure to fumes, odors, dust, and gases. Furthermore, the claimant was limited to simple, routine tasks learned by rote or short demonstration with simple instructions, with few workplace changes, little judgment required, and simple and direct supervision, with no more than occasional contact with the general public.

[TR 16]. Continuing the step four analysis, ALJ Finnie determined that Plaintiff is unable to perform any past relevant work [TR 20]. At step five, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, ALJ Finnie found that there are unskilled, light jobs existing in significant numbers in the national economy that Plaintiff could perform, such as such as a price tagger (DOT code 209.587-034), photocopy machine copier (DOT code 207.685-014), and a non-postal mail clerk (DOT code 209.687-026) [TR 24-25]. Based on this determination, ALJ Finnie concluded Plaintiff has not been under a disability from the alleged onset date, January 1, 2015, through the date of last insured, March 31, 2017 [TR 22].

On April 6, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 292-294]. The Appeals Council denied Plaintiff's request on September 4, 2020, making the decision of the ALJ the final decision of the Commissioner [TR 1-4]. On November 3, 2020, Plaintiff filed the instant suit [Dkt. 1]. Plaintiff filed her Opening Brief on November 24, 2021 [Dkt. 24], the Commissioner filed its Brief in Support on January 24, 2022 [Dkt. 25], and on February 3, 2022, Plaintiff filed her Reply Brief [Dkt. 26].

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021)) (cleaned up); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 19 F.4th at 718 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically

determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

At step two, the ALJ must consider the severity of an impairment or combination of impairments to determine if the claimant is disabled. An impairment is not severe "if you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(a)(4)(ii). The Fifth Circuit interpreted this severity standard in *Stone v. Heckler*, holding "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340 (5th Cir. 1984)) (cleaned up).

As acknowledged by both Plaintiff and Defendant in briefing, the Fifth Circuit holds that failure to make a severity finding at step two generally is not reversible error when an ALJ continues with the sequential evaluation process.[1] *Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015) ("[B]ecause the ALJ proceeded to step five of the analysis, any failure to find additional impairment severe at step two does not justify remand.").[2] Indeed, Courts routinely apply a harmless error analysis "if the ALJ shows that the impairments deemed non-severe were still

---

[1] The rationale for this principle is that the severity finding at step two is a threshold assessment that allows the ALJ to dismiss a claim without further evaluation. *Factory v. Comm'r*, No. 4:15-CV-00731-CAN, 2017 WL 1177992, at *5 (E.D. Tex. Mar. 29, 2017) (citing *Delgado v. Colvin*, No. 5:13-cv-137, 2014 WL 3361752, at *3-4 (N.D. Tex. July 9, 2014)). Thus, when an ALJ proceeds past step two, the case does not turn on the question of severity, but instead, whether the claimant's impairments prevent him or her from performing work. *Id.*

[2] "Procedural perfection is not required unless it affects the substantial rights of a party," and as such, the analysis must go an additional step to determine if there was substantial evidence to support an ALJ's finding that a particular impairment is not severe. *Taylor*, 706 F.3d at 603.

considered along with any severe impairments in determining whether the claimant meets a listing and, if not, in determining the claimant's residual functional capacity." *Owen v. Comm'r*, No. 2:19-CV-073-RSP, 2020 WL 1663533, at *2 (E.D. Tex. Apr. 3, 2020). To be clear, however, while ALJs must consider the combined effect of both severe and non-severe limitations in their RFC analysis "the ALJ does not have to include those limitations in the RFC if there is insufficient evidence that they produce limiting effects." *Sistrunk v. Kijakazi*, No. 3:21-cv-413, 2022 WL 3045315, at *2 (S.D. Miss. Aug. 2, 2022).

***First Decision Has No Preclusive Effect On the Second Decision***

Plaintiff complains that the ALJ erred in the Second Decision in finding that her alleged impairments of mixed connective tissue disease and central auditory processing order were not severe at step two [Dkt. 24 at 15]. In furtherance of this argument, Plaintiff repeatedly references the First Decision, where ALJ Shilling found both impairments "severe" [Dkt. 24 at 9]. In reaching the Second Decision, ALJ Finnie was not bound by the First Decision and "was fully entitled to make new findings of fact without needing to explain why those findings differed from a previous, vacated decision." *Farmer v. Comm'r, Soc. Sec.*, No. 1:12-cv-2579, 2018 WL 3750976, at *9 (N.D. Ga. July 10, 2018) (rejecting plaintiff's argument that the ALJ needed to explain his departures from the first decision), *report and recommendation adopted*, No. 1:17-cv-2579, 2018 WL 3744197 (N.D. Ga. Aug. 6, 2018); *see also Mendez v. Saul*, No. 7:19-cv-291, 2021 WL 1217376, at *2 n.2 (S.D. Tex. Jan. 6, 2021) ("Although the findings and conclusions of the two ALJs differed, the second ALJ was not bound by the findings of the first ALJ."), *report and recommendation adopted*, M-19-291, 2021 WL 1215842 (S.D. Tex. Mar. 31, 2021).

Though conceding that ALJ Shilling's findings in the First Decision are not issue preclusive and do not bind ALJ Finnie, Plaintiff argues the findings are relevant to the Court's

consideration [Dkt. 24 at 9 citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("When the Secretary remands cases for re-determination, there is no rule of issue preclusion")]. While Plaintiff is correct that ALJ Shilling found Plaintiff's mixed connective tissue disease and CAPD "severe" at step two and ALJ Finnie did not, carrying such contention forward, Plaintiff's argument breaks down. If the Court were to adopt Plaintiff's theory that ALJ Shilling's findings are persuasive, then the Court must also consider and find relevant the remainder of the First Decision. Most critically, at step four, ALJ Shilling assessed Plaintiff's RFC:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds, she can sit 6 hours in an 8-hour workday, and stand and/or walk 6 hours in an 8-hour worday. She should not climb, use ladders, ropes or scaffolds, or crawl. The claimant should avoid exposure to extremes of cold and heat, wetness and humidity; she should avoid concentrated exposure to fumes, odors and dust. She should have no overhead reaching with the right extremity. The claimant can understand, remember and carryout detailed tasks and instructions; she requires work with occasional public contact, and occasional coworker and supervisory interaction. The claimant can ask questions or request assistance. The claimant should work in an office environment.

[TR 112]. ALJ Shilling—after finding the mixed connective tissue disease and central auditory processing disorder severe at step two—did not include any of workplace related accommodations Plaintiff advocates are necessary to account for these conditions, including reduction of auditory and visual distractions, allowing extra time for processing information, repeat or rephrase information when necessary, and use hearing protection in the presence of loud sounds. Moreover, as Plaintiff himself argues, this RFC is formulated on the same evidence that ALJ Finnie relied on. Thus, in urging this Court to find relevant ALJ Shilling's severity findings, the RFC he formulated, which is much less stringent than ALJ Finnie's, also could not be ignored.

ALJ Finnie's findings in the Second Decision are supported by substantial evidence of record, as discussed *supra*, which is the only decision that this Court finds is relevant here.

*Alleged Error Step Two*

"[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S. § 423(d)(3). "[A]n unsupported medical conclusion as to impairment or disability is not sufficient to establish disability under the Act." *Harrell v. Brown*, 862 F.2d 471, 478 (5th Cir. 1988). "In the absence of clinical findings demonstrating that functional limitations are present, the agency does not possess the discretion to base a finding of disability on the claimant's reported symptoms or alleged limitations." *Thomas v. Comm'r, Soc. Sec.*, No. 4:20-cv-204, 2022 WL 413928, at *3 (N.D. Miss. Feb. 10, 2022) (citing *Randall v. Astrue*, 570 F.3d 651, 657-58 (5th Cir. 2009) ("the Act and the regulations 'separate the question of the impairment's existence from the question of its severity'")). The mere presence of a diagnosed or observable medical condition does not establish the presence of any particular degree of impairment or functional loss unless there are clinical findings showing that work-related functional limitations have resulted from these changes. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) ("a showing of the mere presence of a condition is not sufficient" to establish impairment). Rather, to establish that a severe impairment is present, a claimant must meet her burden of demonstrating (1) a functional impairment, (2) attributable to a medically determinable impairment, that (3) limits her ability to perform basic work activities. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Stone*, 752 F.2d at 1101. There is no burden on the Commissioner to prove the absence of a claimant's alleged impairments. *See Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (burden of establishing the presence of a medically determinable impairment with acceptable medical

evidence is on the claimant); *see also Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999) (Plaintiff has the burden to present medical evidence that supports her claim of a severe impairment).

### *Mixed Connective Tissue Disease*

Plaintiff argues she was diagnosed with mixed connective tissue disease, and that, in fact ALJ Finnie acknowledged such diagnosis [Dkt. 24 at 9, 17]. However, after careful review of the administrative record, the Court finds ALJ Finnie did not state or find Plaintiff was diagnosed with mixed connective tissue disease. The Court is similarly unable to find any definitive diagnosis of mixed connective tissue disease in the medical record. None of the medical evidence cited by Plaintiff establishes a diagnosis of mixed connective tissue disease. Plaintiff first references, a September 2, 2016, lab result reflecting Plaintiff has RNP antibodies [TR 521]. There is a handwritten note at the bottom of the page stating the following: "Autoimmune Disease NEW MCTD." On the next page is a printout from the Merck Manual about mixed connective tissue disease similarly with handwritten notes on it [TR 523-525]. It is unclear who wrote these notes on the lab report or on the printout; Commissioner contends it was the Plaintiff [Dkt. 25 at 8]. Plaintiff does not deny this contention in her Reply. Rather, she advocates that this documentation demonstrates Dr. Welch interpreted the results as "consistent with an autoimmune disease, namely mixed connective tissue disease" [Dkt. 26 at 2]. At a follow-up visit with CFNP Metzger, on September 20, 2016, Plaintiff reported continuing swelling of her lower legs, right lateral side leg pain, a rash, fatigue, malaise, extremity weakness, joint pain and swelling, muscle weakness, and myalgia [TR 573]. CFNP Metzger noted her family history of autoimmune disease and recommended her to have follow-up testing [TR 574]. There is no mention of a mixed connective tissues disease in this report. Plaintiff saw CFNP Metzger again on October 4, 2016, and during this visit while CFNP Metzger reported elevated ANA levels, Plaintiff admitted that her symptoms

had significantly improved on Cymbalta [TR 579-580]. Again, there was no mention of mixed connective tissue disease. Plaintiff saw CFNP Metzger again on January 26, 2017; during this visit CFNP Metzger noted Plaintiff had fair control of her elevated ANA levels and had normal musculoskeletal examination results [TR 582, 584]. Again, there was no mention or diagnosis of mixed connective tissue disease. During Plaintiff's next visit with CFNP Metzger on February 9, 2017, CFNP Metzger again found normal objective musculoskeletal examination results and there was no mention or diagnosis of mixed connective tissue disease [TR 590]. Plaintiff's "diagnosis" of mixed connective tissue diagnosis appears to be premised wholly on the September 2, 2016, handwritten notes [TR 521].

The ALJ considered these records cited by Plaintiff, as well as the remainder of the medical record. On September 21, 2016, Dr. Darrell Horton completed a clinical interview/mental status examination of Plaintiff [TR 527-531]. Plaintiff reported a number of problems, her chief complaints were for central processing and auditory processing, CAPS, COPD, asthma, allergies, severe pulmonary disease, and joint muscle pain autoimmune [TR 527]. Dr. Horton, after considering all of Plaintiff's complaints, diagnosed her with unspecified depressive disorder and unspecified anxiety disorder [TR 530]. The following month, on October 15, 2016, Dr. Douglas Darden completed a medical report [TR 533-539]. Plaintiff stated her chief complaints were breathing and joint problems [TR 533]. As it pertained to her joint problems, she reported that her current symptoms included throbbing joint pain, swelling, stiffness, and itching [TR 533]. She explained that her symptoms improve with Cymbalta [TR 533]. She reported that the intensity ranges from an eight out of ten on most days [TR 533]. Dr. Darden noted that Plaintiff had no palpable muscle spasms and her strength was normal [TR 533]. Under "Musculoskeletal," Dr. Darden noted the following:

> No joint swelling, erythema, effusion, tenderness or deformity. The claimant was able to lift, carry and handle light objects. The claimant was able to squat and rise from that position with ease. The claimant was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table. The claimant was able to walk on heels and toes with ease. Tandem walking was normal and the claimant could hop on either foot bilaterally. The claimant was cooperative and gave good effort during the exam.

[TR 537]. While Dr. Darden noted Plaintiff *alleged* her joint pain was "mixed connective tissue disease," he further concluded, "I cannot assess joint pains or mixed connective tissue disease but based on my exam, she had no erythema, swelling, or decreased range of motion of any joints" [TR -537-538]. The record fails to support Plaintiff's claim of mixed connective tissue disease. *Ranes v. Astrue*, No. 3:08-cv-2023, 2009 WL 486037 (N.D. Tex. Aug. 14, 2009) (finding plaintiff had not established her diagnosis of depression where there was not "any evidence that she was ever diagnosed with depression."); *see also Acosta v. Astrue*, 865 F. Supp. 2d 767, 791 (W.D. Tex. 2012) (citing *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988)) ("An impairment that can be reasonably remedied or controlled by medication or treatment is not disabling and does not affect RFC."). The ALJ properly did not include mixed connective tissue disease as a "severe" impairment at step two in the Second Decision.

### *CAPD*

A closer call is presented by Plaintiff's argument that the ALJ erred in finding her central auditory processing disorder was not severe [TR 24]. In support of her argument Plaintiff offers an auditory processing evaluation completed at the UNT Speech and Health Center on February 16, 2016, diagnosing her with central auditory processing disorder [TR 500-502, 689-690]. Dr. Erin Schafer completed an auditory processing evaluation at this visit [TR 500-502]. The results showed borderline abnormalities for biaural separation and binaural integration skills, as well as speech perception on noise [TR 500-501]. Dr. Schafer concluded, "Ms. Steele has the

most difficulty with understanding speech in noisy environments, understanding and following directions, and maintaining attention" [TR 502]. Dr. Schafer recommended that Plaintiff:

(1) Consider participation in a dichotic listening training program,
(2) Reduce auditory and visiaul distractions,
(3) Allow extra time for processing information,
(4) Repeat or rephrase information when necessary, and
(5) Use hearing protection whenever in the presence of loud sounds.

[TR 502]. There are no other medical records substantively addressing this impairment. And notably, Plaintiff explained in her testimony that she has suffered from this disorder her entire life, including when she was working as a loan officer and office worker, but never sought treatment, even after her February 2016 evaluation [TR 21, 43, 343]. *See Acosta*, 865 F. Supp. 2d at 792-93 (quoting *Martise v. Astrue*, 641 F.3d 909, 924 (5th Cir. 2011)) ("A condition that was not disabling during working years and had not worsened cannot be used to prove present disability.").

However, even if a failure to include Plaintiff's alleged CAPD (or mixed tissue disease) at step two was in error, this case did not turn on a finding that Plaintiff's impairments were not severe at step two; it is undisputed that the ALJ continued the sequential evaluation.

### *Harmless Error*

Notwithstanding, Plaintiff argues any step two error cannot be found harmless because the ALJ failed to include limitations for Plaintiff's non-severe impairments in Plaintiff's RFC.[3]

---

[3] The RFC is an assessment, based on all the relevant evidence, including, but not limited to: medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 WL 374184, at *5. The RFC provides the claimant's maximum ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 416.945(a); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most a claimant is able to do despite her physical and mental limitations. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). "The ALJ's RFC decision can be supported by substantial evidence even if he does not specifically discuss all the evidence that supports his decision, or all the evidence that he rejected." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Further to this point, the ALJ as a "factfinder" is not required to incorporate limitations in the RFC that he did not find to be supported by the record. *See Muse*, 925 F.2d at 790; *Kozlowski v. Colvin*, No. 4:13-cv-020-A, 2014 WL 948653, at *7 (N.D. Tex. Mar. 11, 2014). The inquiry for the Court is whether the record as a whole "yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*,

The Court finds the ALJ properly considered Plaintiff's alleged limitations in developing the RFC. Specifically, related to Plaintiff's alleged CAPD, the RFC includes that the "the claimant is limited to simple, routine tasks learned by rote or short demonstration with simple instructions, with few workplace changes, little judgment required, and simple and direct supervision, with not more than occasional contact with general public." [TR 16]. In formulating this RFC the ALJ expressly references Plaintiff's testimony explaining her CAPD symptoms and the February 2016 audiological evaluation:

> At the supplemental hearing, the claimant testified she stopped working primarily due to her breathing issues. She reported having asthma and was on multiple medications. She reported being sensitive to hot and cold, and smells. She stated stress made her condition worse, and allergies. She reported having at least three bad days per month, where she was unable to do any physical activity. The claimant also reported having knee and hip pain and stated she was later diagnosed with lupus, as well as fibromyalgia, but original diagnosis was noted to be mixed connective tissue disorder. The claimant reported that, prior to her date last insured; she had issues with standing longer than 20 minutes. She could not lift more than about 10 pounds, had difficulty using her hands, handling items due to her eczema, and also reported depression and anxiety. She also reported difficulty talking on the phone, difficulty keeping organized, having to have things repeated, and difficulty following along, which she attributed to her diagnosis of central auditory processing disorder. She reported she would not have been able to work full-time due to her pain, tiredness, and breathing issues.
>
> ….
>
> Audiological evaluation was performed at the claimant's request due to reported symptoms including sensitivity to loud sounds, difficulty following directions and understanding television programs, confusion on noisy environments, short attention span, anxiety, and a lack of self confidence and motivation. Evaluation results were noted to be within normal limits, with the most difficulty noted in understanding speech in noisy environments, understanding and following directions, and maintaining attention. Recommendations were made to assist her, but with no specific limitations identified precluding functioning (Exhibit 5F/4-6; 14F).

---

219 F.3d 378, 393 (5th Cir. 2000); *see Perez v. Barnhart*, 416 F.3d 457, 461 (5th Cir. 2005); *Jones v. Saul*, No. 4:20-CV-00772-BP, 2021 WL 2895867, at *4-5 (N.D. Tex. July 9, 2021) (finding no error where the ALJ determined that [the treating physician's] opinion was inconsistent with the record as to the limitations he expressed).

REPORT AND RECOMMENDATION – Page 13

[TR 16-18]. Further to this point, Plaintiff explained at the Supplemental Hearing that the central auditory processing disorder causes problems with her hearing and that she needs "to have things repeated a lot" and she is "bad with sequences of things and keeping things organized" [TR 44]. More specifically, she testified:

> Q      in what way are you affected by your depression, anxiety, or your central processing disorder? How do those affect your ability to perform work functions?
>
> A      Well, when I have problems with work as hearing on the phone and making sure that I hear things correctly I have to have things repeated a lot for me if there's a lot of background noise. I don't always follow through with it, you know – I'm really bad with sequences of things and keeping things organized. And also I'm not very good at spelling or sounding out words. I'm very I don't really use the computer, I don't know how to type. I'm not – I'm computer illiterate which it limits me on that. I have a hard time writing like a – it takes me a long time to write an email, let's put it that way.
>
> ….
>
> A      Well, I've had, you know, the central processing disorder all my life, it's just gone undiagnosed. I used to have a lot of easier times when things were a lot simpler, when things didn't have a bunch of rules. I was a landlord for -- since I was 20. I worked as a loan officer, but everything was manual. I just wanted to let you know the company that I did work for was for my husband so I could get away with a lot of stuff that employers wouldn't get away with, or employees wouldn't get away with and I can't set that system back up again.

[TR 42-45 (emphasis added)]. Thus, while Plaintiff asserts that the ALJ failed to account for her central auditory processing disorder in his RFC determination, the record reflects to the contrary. The ALJ took into consideration her chief complaints concerning this disorder and incorporated them into the RFC by limiting her to "simple, routine tasks learned by rote or short demonstration with simple instructions…with not more than occasional contact with general public" [TR 16]. *See Armstrong v. Saul*, No. 3:19-cv-001137, 2020 WL 410197, at *4 (S.D. Tex. Jan. 21, 2020) (finding the ALJ properly accounted for plaintiff's complaints associated with her central auditory

processing disorder by including moderate limitations as to concentration in the RFC), *report and recommendation adopted*, No. 3:19-cv-00137, 2020 WL 641695 (S.D. Tex. Feb. 11, 2020); *see also Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) ("[R]estrictions to rare public interaction, low stress, and simple, one- to two-step instructions reflect that the ALJ reasonably incorporated [the claimant's] moderate concentration, persistence, and pace limitations such that the hypothetical question was proper."); *see also Menkes v. Astrue*, 262 F. App'x 410, 412 (3d Cir. 2008) ("Having previously acknowledged that [the claimant] suffered moderate limitations in concentration, persistence and pace, the ALJ [properly] accounted for these mental limitations in the hypothetical question by restricting the type of work to 'simple routine tasks.'"). He also referenced, in doing so, treatment notes from the only medical opinion that addresses this diagnosis. Lastly, it appears that Plaintiff herself admits that she was able to work even with these symptoms. The Court finds that even in the event the ALJ erred at step two, this error was harmless and does not find remand necessary. *See Enriquez v. Acting Comm'r of Soc. Sec. Admin.*, No. EP-3-17-CV-00329, 2018 WL 2293967, at *3 (W.D. Tex. May 18, 2018) (finding that the ALJ committed harmless error because he took into account plaintiff's chief complaints related to her fibromyalgia in formulating the RFC even though he found it non-severe at step two); *see also Gibbons v. Colvin*, No. 3:12-cv-0427, 2013 WL 1293902, at *16 (N.D. Tex. Mar. 30, 2013) (holding if the ALJ erred in failing to recognize certain impairments as severe at step two, this error was harmless because the ALJ considered the impairments in the RFC); *see also Herrera v. Comm'r*, 406 Fed. Appx. 899, 903 (5th Cir. 2010) (per curiam) (holding that the ALJ's failure to assess the severity of a claimant's impairments at step two is not a basis for remand where the ALJ proceeds beyond step two and determines that a claimant, despite severe impairments, retained the RFC to do other work).

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 29th day of August, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE